TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00281-CV






Richard D. Parker, Appellant



v.



The State of Texas; The City of Houston; and Transit Authority of Houston, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 98-00772, HONORABLE PETER M. LOWRY, JUDGE PRESIDING 







 Appellant Richard D. Parker appeals from a judgment awarding the State of Texas,
the City of Houston, and the Transit Authority of Houston (collectively "the State"), appellees, 
past-due taxes owed by Century Architectural Hardware Corporation ("Century"). The State sued
Parker, seeking to recover from him individually Century's delinquent taxes. Following a bench
trial, the district court found in favor of the State. Parker was ordered to pay $89,711.13 to the
State, $10,923.09 to the City, and $10,923.09 to the Transit Authority. We will reverse the trial
court's judgment and render judgment that the appellees take nothing in their suit against Parker.

 Parker was the sole owner and director of Century, a closely held corporation. 
Parker signed Century's application for a sales tax permit as an authorized representative; he also
signed Century's 1992 and 1993 franchise tax reports and several checks written on Century's
account for tax payments. Century filed for Chapter 11 bankruptcy in April 1993, and ceased
operations altogether in December 1993 or January 1994. The State sued Parker as an individual
for taxes owed by Century for December 1992, January through March 1993, and December
1993. Evidence showed that Century made sales generating $11,863.59 in tax liability in
December 1992, $6,841.62 in January 1993, $8,462.93 in February 1993, $8,910.12 in March
1993, and $483.39 in December 1993. A certificate issued by the State Comptroller was admitted
without objection ("the comptroller's certificate"). The comptroller's certificate names Parker as
the taxpayer and states that on August 18, 1999, Parker owed a total of $84,341.08 to the
appellees; the certificate does not reference Century. 


Discussion

 In his first issue on appeal, Parker argues that the State failed to prove the amount
of taxes collected. He agrees that the comptroller's certificate established the amount of taxes not
paid to the State by Century, but he argues the certificate does not prove how much tax money was
actually collected because Century used an accrual method of reporting taxes.(1) The State contends
that because the certificate names Parker as the taxpayer, the record contains prima facie evidence
of his tax liability. We agree with Parker that the State failed to produce more than a scintilla of
evidence showing how much tax money was actually collected, as required by the Tax Code.

 The State sought to recover from Parker under section 111.016 of the Tax Code,
which provides that "[a]ny person who receives or collects a tax or any money represented to be
a tax from another person holds the amount so collected in trust for the benefit of the state and is
liable to the state for the full amount collected . . . ." Tex. Tax Code Ann. § 111.016(a) (West
Supp. 2000). A comptroller's certificate, when admitted into evidence, is prima facie evidence
that, if unrebutted, establishes as a matter of law the stated amount of delinquent taxes owed. Tex.
Tax Code Ann. § 111.013(a) (West 1992); N.S. Sportswear, Inc. v. State, 819 S.W.2d 230, 232
(Tex. App.--Austin 1991, no writ). Reading the two statutes together, however, the State still
"must prove the actual amount he received or collected, and his liability is limited to the 'amount
collected.'" N.S. Sportswear, 819 S.W.2d at 233 (quoting § 111.016). 

 Thus, assuming without deciding that Parker is individually liable under section
111.016, the State still has the burden of proving the actual amount of taxes Parker collected. Id. 
The comptroller's certificate alone simply establishes that $84,341.08 in taxes was never paid to
the State; it does not establish how much, if any, of that tax money Parker (or even Century)
actually collected. 

 The State argues that additional evidence establishes Parker's liability. The State
points to Century's tax returns, which established Century's tax obligation based on sales made
during applicable filing periods.(2) The State also argues that it proved taxes were collected through
evidence indicating that Century collected about eighty-six percent of its receivables within sixty
days and that Century had about $33,000 on hand at the time it went out of business. 

 Parker testified that at the time Century incurred the tax liability, he was Century's
sole owner and majority shareholder. Parker said Century's usual practice was to extend credit
to its customers, who were principally contractors. He testified that Century's receivables
"probably averaged 60 days or more" in collection time. He agreed that the normal practice was
to pay "the taxes out of other monies prior to collecting the receivables which included the tax." 

 Parker testified on cross-examination as follows:


Question: Mr. Parker, what percentage of your sales did you say were on the 60-
to 90-day turn around?

Answer: Well, it was average. Some of them would be past 90 days, some might
be a little less than 60. The timing . . . was quite variable. Contractors
had deadlines in which they had to file paperwork with the bank or their
customer, and if they missed their time, you had another full 30 days to
even let them file for the money. So it was variable. It would probably
never be less than 45 days, that would be considered a good turnaround. 
But generally speaking, around 60. The average turnaround would be
around 60 days.

Question: For all of your sales?

Answer: Yes, ma'am.

Question: If you were to average them all, it's a 60-day turnaround?

Answer: Pretty much.


 Parker also testified that when Century went out of business, there was about
$33,000 in Century's account, but the bankruptcy court would not let him write any checks on the
account. The State introduced evidence that in January and March 1993 Parker wrote three checks
on Century's account to pay its sales taxes; those checks did not clear Century's bank and were
returned for insufficient funds. The attorney who represented Century in its bankruptcy
proceedings testified that during the bankruptcy proceedings there were significant restrictions on
what checks could be written on Century's accounts because of competing creditor claims; he
believed some checks written before the bankruptcy filing were returned for insufficient funds
because the bankruptcy court closed the account. He also said that Century had $235,671 in
outstanding accounts receivable when it filed for bankruptcy and that the $235,671 included
uncollected sales taxes.

 While the evidence to which the State points may indicate that some tax money was
collected, it does not answer the question of how much money was actually collected. Evidence
of average collection percentages does not establish actual collections. Further, the record
contains indications that the State knew some of the tax money may not have been collected. 
When asked, "You didn't do any investigation to determine whether the [tax] funds were ever
collected and not paid over [to the State]," Chamberlin answered only that he had checked to see
whether Century had filed regular returns for the periods in question. He also said he was
unaware that Century was in bankruptcy in 1993. A bankruptcy attorney with the Texas Attorney
General's Office who reviewed the comptroller's claim against Century testified that the
bankruptcy record indicated $235,671 was outstanding as accounts receivable at the time Century
filed for bankruptcy. He said those outstanding accounts receivable included some taxes owed to
the State but not collected by Century.

 Finally, the State argues that Parker never denied collecting the owed tax money
and that Parker was in a position to produce proof that the money was not collected. We will not
shift the burden that requires the State to prove taxes actually collected by requiring Parker to
rebut a presumption that all reported taxes were collected. N.S. Sportswear, 819 S.W.2d at 233.

 We hold that the record does not contain more than a scintilla of evidence of how
much tax money was actually collected by Parker. Therefore, the record does not support
rendition of a judgment against Parker under section 111.016(a) of the Tax Code. Due to our
resolution of Parker's first issue on appeal, it is unnecessary to reach his other two issues. We
reverse the district court's judgment and render judgment that the appellees take nothing in their
suit against Parker.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Yeakel

Reversed and Rendered 

Filed: December 7, 2000

Publish

1. Steve Chamberlin, an accounts examiner for the comptroller's office, explained the accrual
method of sales tax accounting as follows: a sale is considered to have been made when an invoice
is issued, and sales taxes are due during the filing period covering the date of the sale even if the
invoice is not paid by the customer during that filing period. In other words, if a sale is made on
May 1, meaning an invoice is issued and the customer receives merchandise on May 1, the sales
tax is due on June 20, the due date for sales taxes owed during the filing period covering May 1,
even if the customer does not pay the invoice until July 1. Sales taxes are due whether or not the
actual taxes have been collected by the company.
2. At trial, Chamberlin was asked, "Can you state for the Court the amount of sales taxes that
were collected [in December 1992]?" Chamberlin answered, "It's $11,863.59." However, the
question misstates the evidence. The exhibit to which the question and answer referred, Century's
tax return for December 1992, indicates taxable sales were $143,801, resulting in $11,863.59 in
taxes owed. It does not indicate how much of that money Century actually collected.


 full 30 days to
even let them file for the money. So it was variable. It would probably
never be less than 45 days, that would be considered a good turnaround. 
But generally speaking, around 60. The average turnaround would be
around 60 days.

Question: For all of your sales?

Answer: Yes, ma'am.

Question: If you were to average them all, it's a 60-day turnaround?

Answer: Pretty much.


 Parker also testified that when Century went out of business, there was about
$33,000 in Century's account, but the bankruptcy court would not let him write any checks on the
account. The State introduced evidence that in January and March 1993 Parker wrote three checks
on Century's account to pay its sales taxes; those checks did not clear Century's bank and were
returned for insufficient funds. The attorney who represented Century in its bankruptcy
proceedings testified that during the bankruptcy proceedings there were significant restrictions on
what checks could be written on Century's accounts because of competing creditor claims; he
believed some checks written before the bankruptcy filing were returned for insufficient funds
because the bankruptcy court closed the account. He also said that Century had $235,671 in
outstanding accounts receivable when it filed for bankruptcy and that the $235,671 included
uncollected sales taxes.

 While the evidence to which the State points may indicate that some tax money was
collected, it does not answer the question of how much money was actually collected. Evidence
of average collection percentages does not establish actual collections. Further, the record
contains indications that the State knew some of the tax money may not have been collected. 
When asked, "You didn't do any investigation to determine whether the [tax] funds were ever
collected and not paid over [to the State]," Chamberlin answered only that he had checked to see
whether Century had filed regular returns for the periods in question. He also said he was
unaware that Century was in bankruptcy in 1993. A bankruptcy attorney with the Texas Attorney
General's Office who reviewed the comptroller's claim against Century testified that the
bankruptcy record indicated $235,671 was outstanding as accounts receivable at the time Century
filed for bankruptcy. He said those outstanding accounts receivable included some taxes owed to
the State but not collected by Century.

 Finally, the State argues that Parker never denied collecting the owed tax money
and that Parker was in a position to produce proof that the money was not collected. We will not
shift the burden that requires the State to prove taxes actually collected by requiring Parker to
rebut a presumption that all reported taxes were collected. N.S. Sportswear, 819 S.W.2d at 233.

 We hold that the record does not contain more than a scintilla of evidence of how
much tax money was actually collected by Parker. Therefore, the record does not support
rendition of a judgment against Parker under section 111.016(a) of the Tax Code. Due to our
resolution of Parker's first issue on appeal, it is unnecessary to reach his other two issues. We
reverse the district cour